## COATS v. WINDSOR et al.*

No. 5195.

Court of Appeal of Louisiana. Second Circuit.

April 30, 1936.

Theus, Grisham, Davis & Leigh, of Monroe, for appellants.

Todd & Todd, of Bastrop, for appellee.

DREW, Judge.

Plaintiff was an employee of Roy C. Windsor and engaged in selling automobiles on a commission basis. While in the course of his employment, and on a mission for his employer, the car in which he was riding collided with another car and he was seriously injured.

The accident occurred on October 27, 1932, and defendant paid compensation to petitioner from the date of the accident until July 4, 1934, at the rate of $8.51 per week, which is admitted by all parties to be 65 per cent. of the weekly wage earned by plaintiff while in defendant's employ. On October 11, 1934, this suit was filed wherein plaintiff alleged he was due compensation at the rate of $20 per week since the date of the accident, and $250 for hospital and doctors' bills.

After filing answer, defendant tendered to plaintiff, and it was accepted, the sum of $275, $250 of which was for hospital and doctors' bills and $25 to apply on court costs.

The lower court found plaintiff to be totally and permanently disabled, and awarded him compensation for a period not to exceed 400 weeks, to begin on the date of the accident, less a credit of 88 weeks previously paid. Defendant has appealed, and plaintiff has answered the appeal, praying that the amount of the award per week be increased from $8.51 to $17.-02.

There is no contest as to the accident, and defendant's liability for compensation, if any, is due under the circumstances, which will be hereafter related. The only question for determination is the extent of injury and the amount of compensation to which plaintiff is entitled.

Plaintiff was severely injured in the collision. The large bone of the right leg was fractured about four inches below the femur; several of his teeth were knocked out; a cut on the head; and an injury to the back near the sacroiliac region. He was terribly bruised almost all over the body. Plaintiff was rushed to the sanitarium in Vicksburg, Miss., and placed in a cast with his right leg extended, and remained for several months in this condition, when he was removed on a cot to his home, where he remained for more than a month before he was able to get out, with the use of crutches. Plaintiff

used both crutches for several months, and then was able to discard one, later discarding the other, and walked with the aid of a stick, which had also been discarded at the time of trial below. In the latter part of April, 1933, plaintiff, although still using crutches, went back to work for defendant as an automobile salesman on the same commission he received before the accident, and continued in his employment until July, 1934, when he secured a better position with another automobile dealer in a near-by town. He continued in this last employment up to the time of trial, and we presume is so employed now.

It is admitted that plaintiff's earnings per week since he began work in April, 1933, are greater than they were prior to the accident, although he has not fully recovered from the injuries received, and may never fully recover. The fracture of the leg bone has thoroughly healed, with good union, and the legs are now the same length. He still suffers from the sciatic nerve, which causes pain when pressed upon. His knee is somewhat stiff, as is his ankle, and there is a slight drooping of the toes. In walking, plaintiff has a slight limp and has some difficulty in mounting stairs and walking on rough ground. He drives his car and, in fact, does most everything he did prior to the accident, but complains of pain in the said leg and back, or hip. After taking too strenuous exercise, plaintiff suffers much at night and is forced to take medicine to ease his suffering.

We gather from a close study of the testimony of the many doctors who testified that plaintiff's principal trouble at the time of trial, if not his entire trouble, is the stiffness in the knee and ankle and pain in the sciatic nerve, and we are convinced this condition is a direct result of the accident. From the medical testimony we can safely find that his disability to perform work he did prior to the accident does not exceed 25 per cent., and, as time passes on, he will not be disabled to exceed 10 per cent., provided he takes the proper exercise which is the only cure for the stiffness in the knee and ankle, both of which were caused by the effort to extend the leg and the cast required to be worn for several months.

Plaintiff is not totally disabled; if he were, he could not perform the duties of an automobile salesman, which he has performed continuously since April, 1933.

We find he is partially, permanently disabled to the extent of 25 per cent.

Plaintiff contends that a man who has to work in pain is totally disabled, for the reason that the law does not require one to work when the work causes severe pain. This principle is correct, but does not apply in this case, for the reason that nearly every doctor testified the only cure for plaintiff's present partial disability was exercise, and none testified that the exercise he got in his present occupation was too strenuous. It is an evident fact that the pain which is caused principally by the sciatic nerve would not cease if he did not take any exercise. Exercise is necessary to further improvement in his condition, and it can make no difference whether the exercise he takes is idle exercise or used in a gainful occupation, so long as the exercise is not too strenuous.

The Compensation Law (Act No. 242 of 1928, p. 357, § 8) provides that the amount of compensation due in cases of partial, permanent disability is 65 per cent. of the difference between the amount of wages earned prior to the injury and the amount earned afterwards, and, where the amount, as in this case, is greater after the injury than before, it follows that no compensation is due. But plaintiff contends that, while $8.51 per week is 65 per cent. of the weekly wage earned by him in his employment with defendant before the injury, he earned other money from other people and only devoted about one-half of his time to defendant's business; therefore the weekly wage should be fixed at twice the amount he actually earned from defendant, and, when figured on this basis, his weekly wage exceeded by far his weekly wage after the accident.

Plaintiff was employed by defendant, who was a Chevrolet dealer, to sell cars on a commission. Under the employment no set hours were fixed. He was not paid for the number of hours nor days he worked, but entirely upon the sales he made. Under the employment plaintiff could sell cars at night, on Sunday, or whenever he found a buyer. He was supposed to report each day, but whether he worked all day or a part of a day was left entirely to him. He was naturally supposed, under his employment, to use his best efforts at all times to sell the cars his employer had to sell. It is true that on several occasions different individuals had secondhand cars to sell which his em-

ployer did not want or could not trade for, and, with his employer's permission, plaintiff was allowed to dispose of such cars and collect for his services. However, this was done only when it did not interfere in any way with the duties he owed to his employer; but this did not change the situation. He was a full-time employee of his employer, including nights and Sundays, the same as all other salesmen who work on commission selling automobiles, and the compensation to which he is entitled under the law is based upon his earnings in the service of his employer, defendant herein. He does not contend that if, while attempting to sell a car for some individual, he had found a prospect for a Chevrolet, he would not have sold him. He at no time severed his employment with defendant, was in his employ at all times, and was merely allowed the privilege of making a few extra dollars on the outside when it did not interfere with defendant's business.

We are convinced that the rate of weekly compensation paid by defendant up until July, 1934, was the correct amount due.

█ Plaintiff further contends that at the time of the injury the automobile business was dull, due to the fact that a new model was soon to be brought out, and that his compensation should not be based upon his earnings during that dull period, but upon his earnings in the good season of the year. This contention is without merit, due to the jurisprudence of this state in cases of this kind, which hold that the rate of weekly compensation is based upon the weekly wage at the time of the accident.

We have searched in vain for some law to justify a verdict for plaintiff, due to the seriousness of his injuries and the lack of just compensation in this individual case, under the Compensation Law (Act No. 20 of 1914 as amended), but the statute is only intended for financial compensation and not for general relief, and some basis upon which to fix the compensation due must necessarily be fixed, although in some individual cases, as here, a hardship might inure, due to the unusually low wage at the time of the accident.

We might rightfully find, under the pleadings and evidence, that plaintiff has partially lost the use and function of the right leg to the extent of 25 per cent. and allow compensation for 175 weeks, but to do so would be of no help to plaintiff, for the reason he has been paid more compensation than 25 per cent. of the loss of function of the leg would amount to.

We therefore conclude that plaintiff is not entitled to any further compensation in any amount, and the judgment of the lower court is reversed and plaintiff's demands rejected.