108 So.2d 273 (1959)
Milton FOUCHEA
v.
MALONEY TRUCKING & STORAGE, Inc.
No. 21261.
Court of Appeal of Louisiana, Orleans.
January 20, 1959.
*274 Cassibry, Jackson & Hess, New Orleans, for plaintiff-appellant.
Beard, Blue & Schmitt and David C. Treen, New Orleans, for defendant-appellee.
McBRIDE, Judge.
This is an action for workmen's compensation brought by Milton Fouchea against Maloney Trucking & Storage, Inc., by whom he had been employed in the capacity of truck driver and loader. Plaintiff alleges that by virtue of an accident which occurred during the scope and course of this employment on December 5, 1957, he has been rendered totally and permanently disabled from doing work of any reasonable character for which he is suited by reason of his training and experience, and claims of the defendant the benefits under the Workmen's Compensation Statute for total and permanent disability for 400 weeks at the maximum rate, together with medical and incidental expenses in the sum of $2,500, etc. The defendant makes two defenses: first, that the accident of which plaintiff complains did not take place, and, second, that if there was an accident, plaintiff was not disabled from and after January 24, 1958, and that as of such date he was fully able to return to his occupational duties with defendant. After a trial in the lower court, the suit was dismissed, the trial judge incorporating in his judgment the following reasons therefor:
"1) Plaintiff sustained an accident on the job substantially as testified to by him.
"2) Plaintiff has failed to prove that since his discharge by Dr. Andrews on January 24th, 1958 he has been unable to do heavy labor as a result of that accident.
"3) Insofar as the results of that accident are concerned plaintiff is physically capable of heavy labor; the medical testimony is to the effect that it would do him good to work; and while it is possible he might experience `some degree of discomfort' at first, it is not shown that such pain or discomfort would be disabling, or of such a degree as to entitle him to further compensation."
Plaintiff appealed.
Plaintiff claims he met with an accident on December 5, 1957, while performing his occupational duties with defendant, when a heavy crate containing machinery which he was unloading slipped and severely pulled his arm. He testified that Hilton, a co-worker, was helping to unload the box, but Hilton denies this and states that at no time during his employment with defendant had he ever helped Fouchea lift any kind of machinery or box or crate, and that he has no personal knowledge of the happening of the accident which Fouchea alleges he sustained. However, Hilton admits Fouchea did complain to him that he had hurt his arm.
We have carefully read the plaintiff's testimony pertaining to the occurrence of the accident which he maintains resulted in his injuries, and are satisfied therefrom that the trial judge was correct in holding that Fouchea was hurt on the job on the date alleged and that he suffered a pulling injury to his right arm. Defendant made the argument that whereas plaintiff is uncorroborated in his statement that an accident befell him and because he testified falsely with reference to the presence of Hilton at the scene, that his testimony should be rejected and we should go on record as saying that plaintiff has not proven his case to the extent the law requires. In cases coming under the Workmen's Compensation Law all a plaintiff has to do is to prove his case by a preponderance of evidence as in any other civil case, but this does not mean that the plaintiff's testimony must be supported by testimony from another witness or witnesses. The testimony of the plaintiff alone may be sufficient to prove an accident, but this is subject to the condition that there is nothing appearing *275 which impeaches or discredits plaintiff and his testimony is supported by the circumstances. As to Fouchea's assertion that Hilton was working with him at the time, we take this statement to be merely overzealousness on the part of Fouchea in his effort to show the fact of the accident, but regardless of this, we are unable to say in the light of the circumstances appearing that no accident happened and that Fouchea did not sustain an injury.
Fouchea was treated by the employer's physician until January 24, 1958, and received compensation to said date. The attending physician was of the opinion that plaintiff had recovered from the injury and was fully competent to resume his employment. On January 27 plaintiff returned to work and remained on the job for three days, but he claims he could not use his injured arm in driving a truck or lifting heavy objects because the arm was "bad" and felt "like it was tearing," so he left the job on January 29 and has made no further effort to return. He states that he cannot lift objects, not because of the lack of strength in the arm but because of the soreness. Fouchea states that he has been receiving treatment at Charity Hospital because defendant failed to furnish medical treatment subsequent to January 24, 1958. He does not pretend that his present incapacity to return to work will be permanent. It is conceded in the brief filed on his behalf that the injury is of a temporary nature and that if he is entitled to the statutory benefits, judgment should not be rendered on the basis of permanent total disability but as for temporary total disability.
Three medical experts testified in the case, one of these, Dr. Gernon Brown, an orthopedic surgeon, appearing as plaintiff's witness. Dr. Brown rendered no treatment whatever to plaintiff, and his only role was to examine him on two occasions, first on January 15, 1958, and again on June 9, 1958. The last-mentioned examination was made on the day preceding the day of the trial below.
On the first examination, which was on the forty-first day after the accident, Dr. Brown stated plaintiff experienced "discomfort" when put through various arm and shoulder movements. The doctor admitted that his only objective findings were: (1) a slight atrophy in the muscles of the right shoulder, and (2) a small area of calcification, which latter condition, according to Dr. Brown, entirely disappeared before he made his second examination. He conceded that he had no way of knowing whether the atrophy was attributable to the injury, and explained that this condition could have been caused by nonusage of the arm and shoulder.
Dr. Brown made no definite diagnosis of plaintiff's condition, and stated that he was under the impression there had been a partial dislocation of the right shoulder joint. After the second examination, which was about six months after the accident, Dr. Brown thought plaintiff's condition suggested there had been a tear of the tendons adjacent to the shoulder.
It is significant that Dr. Brown does not say that plaintiff's condition presented any residual accruing from the accident, except he thought plaintiff would encounter pain in making certain movements of his arm. The testimony bearing on this point is as follows:
"* * * However, on the examination of yesterday, the man presented evidence of an increased amount of pain when the arm was abducted, or brought away from his side against resistance. And he also gave a history of having pain when he permitted his shoulder to hang by his side for any length of time."
In regard to plaintiff's present ability to return to his job, Dr. Brown had this to say:
"I think this, I think if the man were called upon to do heavy lifting, he would very likely have discomfort in his *276 shoulder, and if so, might not be able to do it. Although, I have a feeling that he probably could do it if he found it absolutely necessary. I think he could perform these actions. He has the capacity of doing it, but I don't think it could be done without any degree of discomfort."
Dr. Brown admits that if the claimant was his patient he would not forbid him to do any lifting. He would not venture an opinion as to the amount of discomfort the plaintiff would suffer if he attempted to carry on his work.
The defendant called as its witnesses Dr. John D. Andrews, who classified himself as a general practitioner in the field of traumatic medicine and treatment of injury, and also Dr. Hyman R. Soboloff, an orthopedic specialist.
The former was the attending physician and first saw plaintiff the day after the accident and treated him until January 24, 1958, at which time plaintiff was given a medical discharge and advised to return to work. Dr. Andrews' diagnosis was a strain of the right biceps muscle, and his course of treatment was mostly composed of heat diathermy. Dr. Andrews thought plaintiff's injuries had healed as early as December 23, 1957, but upon plaintiff's insistence his arm pained him, Dr. Andrews sent him to see Dr. Soboloff for examination, which was made December 30, 1957, and after receiving Dr. Soboloff's report, Dr. Andrews continued to treat plaintiff until January 24, 1958. He was then of the opinion that there is no residual and that plaintiff is fully capable of returning to his usual employment.
Upon his examination of plaintiff on December 30, 1957, Dr. Soboloff thought there might be some generalized bruising to the shoulder, but there was no evidence of even a minor injury existing when he again examined plaintiff on May 30, 1958, which was about ten days before the trial. Dr. Soboloff disagrees with Dr. Brown and states there was no atrophy about the shoulder girdle or at any other point. He stated Fouchea's indications of pain were not always consistent, and his belief is that plaintiff is fully capable of returning to his job. Dr. Soboloff made it clear that there were no findings which would tend to indicate that plaintiff would sustain pain if he returned to work, and he is of the opinion that if plaintiff would return to work his condition would be greatly benefited thereby in the course of about eight weeks. Dr. Soboloff stated:
"* * * I felt that this man could return to his work. I felt it would take a bit of time in working again, since he had not worked for several months, to get his muscles in the same normal condition again, such as they were before the accident, for heavy duty work. According to the history, he had done no heavy duty work since the time of the injury in early December, until now.
"Q. Was there anything physiologically wrong with him to prevent him from working? A. No."
The trial judge accepted the testimony given by the medical experts produced by defendant and held that any pain or discomfort which plaintiff might experience upon resuming work was not of such a degree as to entitle him to further compensation. We notice that the judge used the words "pain or discomfort," but no doctor testified that plaintiff would sustain pain if he made the attempt to return to his job. All that Dr. Brown said was there would be some "discomfort," but he could not say the extent thereof nor would he say that it is a certainty that plaintiff could not work. In fact he said plaintiff could probably do his work if he found it necessary.
We think this is simply a case where the workman's injuries have completely healed, and the only condition which exists is such discomfort as he would normally be expected to suffer as a result of a long disuse of his shoulder and arm. Dr. Soboloff believes that the performance of work *277 would be beneficial to plaintiff's condition, and a reading of Dr. Brown's testimony indicates to us that he is also of the same mind, for we find him saying that if the plaintiff were his patient, he would not advise him not to return to work.
Plaintiff contends that if he has to endure pain in the course of his work he must be considered totally disabled because the law does not exact that an injured workman must return to work under the handicap of severe pain. We agree that this is a correct statement of the law as would be applied in a case where the pain is caused by the injury itself, but we do not agree that where the injury has been completely healed and the workman's condition is the result only of a long disuse of the injured member that he can refuse to return to work because of slight pain and thus not cooperate with the physicians by taking the prescribed work therapy.
We are convinced that exercise is all that can improve plaintiff's ability to work, and we agree with what the Second Circuit Court of Appeal said in Coats v. Windsor, 167 So. 483, 484:
"* * * it can make no difference whether the exercise he takes is idle exercise or used in a gainful occupation, so long as the exercise is not too strenuous."
Other cases in which was discussed the duty of an employee to cooperate in the treatment given him by returning to work and exercising the injured member where such activity would be beneficial to his condition are O'Niel v. M. W. Kellogg Co., Inc., La.App., 190 So. 182; Costello v. French Market Ice Co., La.App., 159 So. 466, and Daste v. Gwin, 13 La.App. 378, 128 So. 41, decided by this court.
Plaintiff attached to his brief a copy of a letter purportedly written by plaintiff's labor union to his counsel while this appeal was pending before us, but we do not think that the contents of this letter should be taken into consideration. Even if we were to consider the letter, we fail to see how it would be helpful to plaintiff's cause.
It is ordered, adjudged and decreed that the judgment appealed from be affirmed.
Affirmed.