ELLIS, Judge.
This is a workmen’s compensation suit filed by Tanzy Manuel as administrator of his minor child, Rayford Manuel, against Southern Farm Bureau Casualty Insurance Company, the workmen’s compensation insurer of A. M. Moore.
After trial judgment was rendered in favor of the defendant and the plaintiff has appealed.
The plaintiff contends his minor son was injured while acting within the course of and in the scope of his employment when the employee was shoveling dirt. He claims the shovel slipped from his hand and struck him in the right testicle. The employee notified his employer of the injury at noon when a recess for the lunch hour was taken and the employer immediately brought him to the Oberlin Clinic where he was treated by a local physician. Later, this employee was examined by Dr. Frank Savoy of Mamou, who diagnosed his condition as a recurring hydrocele. Plaintiff alleged his minor son is totally and permanently incapacitated from doing any work of a reasonable character. The compensation rate, should any workmen’s compensation be found due, was stipulated.
The district court gave only oral reasons for its decision, dismissing the plaintiff’s suit, but it appears the issues involved are whether this employee received an injury during the course of and within the scope of his employment, and if he did whether this injury is disabling, and if so, what is the period of disability.
In the appellant’s brief it is set forth that the district court in the oral reasons stated the plaintiff had not sustained the burden of proving the employee was imjured during the course of his employment and that one of the reasons given for this conclusion was that some of the fellow employees testified Manuel, the employee, failed to cry out when he claimed he was struck with the shovel handle. The appellant urged that the proof of whether or not the employee was injured is not whether the fellow employees heard an out-cry but rather the testimony of all of the witnesses and all of the surrounding circumstances proved an accident happened.
The employee, Manuel, testified that on Saturday, June 7, 1958, at about 11:35 a. m. he was “butting” levees by throwing dirt with a shovel upon these levees; that while so working he lost his balance and the handle end of his shovel hit him in the right testicle. At the time of this alleged accident he stated he was working with Rider, Veazey and Reed, fellow employees. He further testified he continued to work until the noon hour, when he told these co-employees that he had hurt himself; that after he returned to the warehouse he told his employer that he had hurt himself.
Rider, one of the co-employees, testified he was working with Manuel at the time of the alleged accident and that either Veazey or Reed was working beside Manuel and that he, Rider was working on the *159 opposite side of the levee; that Manuel told him he had hurt himself by the shovel handle striking him in the testicle as he was throwing dirt upon the levee.
Reed testified he was working with Manuel, approximately 8 or 9 feet from him; that Manuel never told him he had hurt himself nor was there an out-cry.
Veazey stated he was working approximately two feet away from Manuel on the morning in question and that he never saw Manuel stumble or lose his balance, nor did he ever complain of being hurt. This co-employee, after stating he had worked pretty close to Manuel all morning, said Manuel never complained of any accident or injury, but that he did tell him he, Manuel, “was going to take off on Saturday evening even if he had to tell a lie J}C ?j£ 3>
Manuel insisted he was hurt by a shovel handle but that he thought the pain would go away, and he stated he told his employer of his injury during the noon hour and his employer took him to a doctor.
The plaintiff, father of the minor employee, testified he looked after the general health of his minor son and would always carry him to doctors when necessary. This witness stated his boy told him he was injured while working and told him of the injury on the date of the alleged accident. Further, that his boy had been operated on for a hydrocele, but that after the operation he had not had any trouble; that after the operation the boy was given a support to wear and advised not to do any work for a period of 3 months; that the boy did not reinjure himself after the operation at any time before he went to work for Moore; that he had to bring his boy, due to swelling, to Dr. Savoy who drained fluid accumulated in the testicle. This was done on two different occasions after the injury.
The evidence shows that in January of 1958 Manuel consulted with Dr. Savoy and at that particular time this doctor drained about 10 cc’s of water out of his testicle. This physician, according to the history of the case, stated the swelling in his testicle started in 1957 and that he was thereafter operated upon at Charity Hospital. After this, while he was doing manual labor, the testicle began to swell again, Dr.. Savoy, in his written report, stated:
“I examined Rayford Manuel and found that this boy is suffering with a recurring hydrocele. This boy was previously operated for same condition, but it seems the result was not totally satisfactory.”
This report was dated June 30, 1958, and: this same physician testified as follows:
“Q. Now, Doctor, you were of the opinion that the operation was unsatisfactory, is that correct? A. That’s right.
“Q. You were of the opinion that this boy was suffering with the same-condition that he was suffering with when he came to see you in January of 1958? A. That’s right, he was suffering with a hydrocele the same as-before.
“Q. Now Doctor, for the Court, I have in my hand a Textbook of Medicine, Sixth Edition, by Saunders, and at page 1270, we find ‘Hydrocele’, and it states: ‘Hydrocele — This is caused by excessive accumulation of fluid in the tunica vaginalis. It may be congenital. When acute, it is always secondary to inflammation of the epididy-mis or of the testis, as for example in syphilitic infection. The chronic type is usually seen in men of middle age. Hydrocele caused by such diseases as filariasis may reach an enormous size.’ A. Yes, that a — a tropical infection.
“Q. You agree with the statement I’ve just quoted to you? A. Of course.
“Q. Now, Doctor, I’m looking at Textbook of Surgery by' Christopher, Third Edition — (The Doctor inter *160 rupts) I beg your pardon? A. Surgical procedure of a hydrocele manipulation.
“Q. It states in here at page 1419. (counsel reads from this book as follows) : 'Hydrocele — when the cavity between the tunica vaginalis and the abdominal cavity remains open, congenital hydrocele of the tunica vagi-nalis results. The same incomplete closure of the peritoneovaginal process may occur somewhere along the cord, and then hydrocele of the cord results.’ A. That’s right. (Mr. Fruge continues reading as follows:)
“ ‘The diagnosis of hydrocele is readily made. The hydrocele of the tunica vaginalis may or may not communicate with the peritoneal cavity.’
“ ‘In the latter event the fluid content may be forced into the peritoneal cavity by compression of the hydrocele. Non-communicating hydrocele of the tunica vaginalis and hydrocele of the cord have a firm fluid consistency and may be transilluminated. They may grow to large size and become thick walled. The treatment of hydrocele is surgical. Injection of irritants to obliterate the cavity has not proved to be successful.’ (The Doctor again interrupts) :
“A. I believe I made that statement a while ago.
“Q. Right sir. (Counsel continues to read from the book) :
“ ‘Either excision of the sac wall or the “bottle operation” is advisable. In the latter, the upper part of the sac is incised, and the sac is then turned inside out, (which I believe you also suggested), a few sutures anchoring it in this position. If the hydrocele communicates with the peritoneal cavity, hernioplasty is necessary.’
“A. ‘Hernioplasty’, that’s an operation closing the hernial ring.
“Q. You agree with the statement I just read? A. Sure I do.
“Q. Now Doctor, the particular hy-drocele which you found in Rayford Manuel was confined to the testicle? A. To the testicle.
“Q. And I believe that you testified if the proper surgical procedure had been followed and the repair done to the testicle, this would not re-occur in the testicle, is that correct? A. That’s right.”
From the testimony of Dr. Savoy it is clear the operation was not a satisfactory one and the further testimony of this expert was that if such a condition as this employee suffered was corrected by surgery a minor blow would not cause a new hydrocele. He stated it would take a fairly good blow and the injury would have to be to the testicle itself and the epididy-mis, a network of blood vessels that supplies blood to the testicle. This network of blood vessels is found at the bottom of the testicle and is on the lateral side thereof. According to this testimony if the employee was injured as he claims, the handle of the shovel would have had to strike him on the lateral side of his testicle, when according to his own evidence, if he was struck, it was on the front side of the testicle.
There is further medical testimony to the effect of how disabling are hydroceles but it is unnecessary to review this testimony if in fact it is found no accident occurred. It appears to us this employee was suffering from an already existing condition and the fact a previous operation was not satisfactory caused a recurrence of a hydrocele. The medical testimony is to the effect that the condition suffered by the employee, without a successful operation, would be recurring, and that after draining relief would be had but that the condition would recur again. As concluded by the trial court the plaintiff has failed to establish the occurrence of an accident within the scope and course of the employment of *161 his son and we find no manifest error in this conclusion.
The appellant calls our attention to the case of Fee v. Calcasieu Paper Co., La.App., 89 So.2d 434, stating the issue here is similar to the one in that case. In the Fee case the plaintiff testified that while loading heavy paper rolls his foot slipped and twisted his back causing an immediate severe pain in his lower back radiating into his right leg. He testified that in his opinion the accident would not be serious and he did not discuss it or report it. After he got home the pain increased to such an extent that he was unable to sleep, took some medication, and the following morning went to the company doctor of the defendant. The preponderance of the medical testimony was conclusive that Fee had been continuously disabled from working since 8:00 a. m. on the day following the accident, which was approximately 14 hours after it, and about 10 hours after Fee left his work. Fee had been employed by the defendant and had performed heavy duties for 2 years prior to the accident. Also he had passed a pre-employment physical examination which the company physician stated was very strict as to the back. The lay testimony, uncontradicted, was that he had been continuously employed at hard labor for 19 years except for two intervals totalling 10 months, when he was on welfare assistance for some stomach disorder. This 10 month period was approximately during World War II, or many years before the alleged accident. In that case the first doctor who examined the plaintiff, found him disabled by a lumbo-sacral strain which he termed “minimal”. Later a specialist to whom he was referred found his strain “acute”. We found the plaintiff there to have been disabled by what initially was a lumbo-sacral strain but which subsequently was indicated to be a permanently disabling condition resulting from a herniated disc. It was proven that whatever injury Fee suffered must have occurred during work hours as he told his wife as soon as he arrived home he was injured and his pain increased through the night. It was uncontradicted that he spent the night at home in bed, had actual physical disability the following morning, and reported to the company doctor.
The situation in the Fee case is entirely different from that in the present one. The type of injury in the Fee case was not such as would make a man cry out and the pain increased through the night. All of the testimony of the plaintiff was corroborated by preponderant medical testimony which showed that disc injuries do not become symptomatic or painful with the first stress or at the first giving of the disc material. It showed that some patients will complain of their back immediately but that others have merely an apparent lumbo-sacral strain and as time passes it appears that the disc was broken at the time but manifested itself only later. In the present case the employee had a former history of an unsuccessful operation for the same condition of which he now complained and the medical testimony shows there was a recurrence of the hydrocele which happened in the usual course of events. We find nothing in the present record whereby the Fee case could be said to be apposite. ’’
Also cited is Fontenot v. Myers, La.App., 93 So.2d 245. There co-employees denied having seen the actual accident where the plaintiff suffered a rope burn on his hand while roping cattle. He did not complain immediately after the accident but started complaining the day after. He did tell his wife upon his return home from work upon the day of the accident that he had suffered this rope burn. He gave the same version of the accident to a physician about a month later, as to how the accident happened and the district court did not make a contrary factual finding but instead based its conclusion upon a legal question involved in the case as to partly hazardous and partly non-hazardous employment. Also the plaintiff’s prior uninterrupted employment with the defendant, with lack of disability and his testimony, with surrounding circumstances and subsequent undoubted *162 disability, led us to conclude in the face of no contrary factual finding by the trial court that the plaintiff proved an accident had occurred by a preponderance of the evidence. This case too is quite different from the present one and is equally inap-posite.
In Fouchea v. Maloney Trucking & Storage, La.App., 108 So.2d 273, the conclusion was reached that the testimony of an employee alone may be sufficient to prove an accident if there is nothing which impeaches or discredits him and the testimony be supported by the circumstances. The circumstances and the facts in the Fouchea case have no bearing here.
The judgment is affirmed.