LOTTINGER, Judge.
This is a workmen’s compensation proceeding which is before us on an appeal taken by the claimant from a Judgment of the lower court which dismissed his demand for benefits for total and permanent disability. There is no real dispute as to the facts which are as follows:
*254 The plaintiff, who was employed as a “clean up” man on a used car lot of the insured, received burns to his right hand on April 17, 1959, as the result of contact with an automobile engine cleaning compound referred to in the transcript as “wildcat”. He was seen the next day by Dr. A. K. Mclnnis who diagnosed his injuries as first and second degree burns, superficial in nature and covering only a small portion of the hand, and who administered the usual treatment of pressure dressings. (Tr. pages 105 and 106). This doctor, and others who testified, stated that the burns caused no damage to nerves, tendons or blood vessels underlying the skin and that when healed there was no scarring adherent to underlying tissues. (Tr. pages 100, 75, 76, 107 and 108).
At the time of trial the plaintiff’s hand •revealed swelling accompanied by a limitation of the ability to flex and extend the fingers. He complained of sensitivity to water and pain on movement together with numbness and discomfort of the arm up to the shoulders.
The defendants do not question the occurrence of the accident or that the plaintiff’s hand was swollen and disabled to some extent as of the date of trial but maintain that any disability the plaintiff may have is not directly attributable to the burns but rather to the plaintiff’s unjustified failure to cooperate with the treating physicians and to assist in his recovery. This issue was resolved against the plaintiff by the lower court and constitutes the sole question presented by the appeal.
Dr. Mclnnis testified that he impressed upon the plaintiff the importance of exercising his hand which advice was apparently heeded during the period from May 25, 1959 to June 18, 1959. (Tr. pages 108 and 109). On the latter date he was discharged, the doctor being of the opinion that the hand was “completely rehabilitated and ready for use”. (Tr. page 106). The doctor was firmly of the opinion that the plaintiff’s present condition was due to his failure to cooperate and use his hand. The following testimony is illustrative:
“Q. Is this man’s present disability due to the chemical burns that he received? A. His burns were healed as of June 18th, 1959. At that time he had a good functioning hand. Now, the only way I could say that this present disuse or present condition of his hand is due to the burn is simply the fact that the burn was the motivating factor is this whole chain of events, but the burn had healed and he had a good functioning hand when I last examined him in June.
“Q. The burns and their residual effect then did not constitute the organic basis for his present disability? A. His burns had healed and he had a good functioning hand as of June 18th, 1959. If he had continued using his hand he would have no difficulty at the present time.
“Q. Approximately how many times did you caution him regarding the use and exercise of his hand? A. I couldn’t say exactly how many times, but I would — at least every time that he was in the office I reminded him of the fact, and he was in the office seven or eight times.” (Tr. page 113)
Dr. Richard Hughes, specialist in plastic and reconstructive surgery who first saw plaintiff on May 21, 1959, was of the same opinion as Dr. Mclnnis and gave the following testimony:
“Q. Now, Doctor, you stated that it is your opinion and your diagnosis that he did have some disability. Now you examined him back when the burns were in the acute state. Are you able to give an opinion as to whether or not the burns that you initially saw directly caused this disability that you say you now find? A. It was my opinion at the time that the burns were minor and that they would not cause this disability themselves, per *255 se, I mean the burns themselves. They were of a minor nature and in my experience I have never seen it occur.
“Q. Well, could — would you or could disuse and the patient’s failure to take proper physiotherapeutic measures which were diagnosed by the treating physician be the direct cause of the disability that you say the man presently has? A. It is my opinion that the man’s present disability is due to disuse. I recommended physiotherapy in the beginning and I still feel that if physiotherapy had been carried out, if the patient had cooperated in moving his hand he would not have the present disability.
“Q. Now, you saw the man’s injuries. Were his injuries such that proper physiotherapeutic measures or exercises could have been carried out by the patient without him suffering any overwhelming pain and discomfort ? A. Yes, in fact that was my recommended treatment, exercise.” (Tr. pages 94 and 95).
Dr. Charles I. Black, dermatologist who examined plaintiff shortly after his discharge by ,Dr. Mclnnis, stated that X-ray findings were negative and that he found no loss of function but only residual scarring where the burned areas had healed. (Tr. pages 74, 75 and 79).
Dr. Thomas Campanella, who testified on behalf of the plaintiff, gave the following pertinent testimony on cross examination:
“Q. But at the time the burns healed don’t you consider that he could probably have returned to work at that time?
“A. I am in no position to say, but I am sure that if Doctor Mclnnis would say so that I would go along with him that if the burns had healed sufficiently at that time and all was well and he sent him to work, that I believe that the patient should have made an effort to work.
“Q. And if he had of exercised his hand and used it do you think that he would present the picture that he does now?
“A. I do not. I don’t think that he would present this bad picture. Now I think that with use and activity, even though it was hurting, he would have had a better looking hand and a much more functional hand that he has now.” (Tr. page 32).
The defense of non-cooperation was commented upon by Professor Malone in his treatise as follows:
“A somewhat similar situation arises when the employee fails to cooperate with his physician. A typical example is a worker’s failure to exercise and massage an injured member in accordance with the doctor’s instructions. Atrophy from disuse results. When the issue was first presented, the court felt that plaintiff’s non-exercise of his injured arm was reasonable in view of the admitted pain involved. However, the same court on the same day cut short compensation in another case where two physicians testified that plaintiff’s failure to exercise his broken finger had extended the disability period, and expressed the opinion that the necessary exercise would not have caused ‘such pain as to make it unreasonable’ to comply with the doctor's instructions. The opinion observed:
" ‘If an employee by his own conduct by his inactivity and neglect after an injury suffers a member of his body to become useless when with proper effort on his part without unusual pain or suffering it could have been restored, he cannot recover compensation for disability.’
“This defense has since met with considerable success. The determina *256 tion is usually made in the light of medical testimony, which, happily enough, is normally less conflicting on this issue than others in compensation law.” Malone, Louisiana Workmen’s Compensation Law and Practice, pages 290 and 291. See also Myles v. Forcum-James Co., La.App., 16 So.2d 542; Fouchea v. Maloney Trucking & Storage Inc., La.App., 108 So.2d 273.
We realize, of course, that under the jurisprudence cited in the above quoted passage the plaintiff is not obliged to exert efforts which would result in unusual pain and suffering. The record before us, however, convinces us that not only is plaintiff’s disability caused by nonuse and non-cooperation but that the plaintiff could have complied with the advice given without unusual pain or discomfort. This is made very clear by the testimony of Dr. Hughes as follows:
“Q. Would you describe or could you characterize the type of pain which he probably would have experienced considering the nature of his injury if he proceeded to do the exercises which he should have done? Would it be — A. You mean the type of pain he would have experienced?
“Q. Would it have been severe, would it be moderate, would it be mild, or how would it be? A. I think it would be a mild, superficial burning pain in the area that was — that had been burned.
“Q. Would you expect that pain to decrease during the period that the exercises were carried out? A. Yes, as the wounds healed the pain would decrease. I wouldn’t anticipate that the pain would be severe or incapacitating.” (Tr. page 102).
The judgment appealed from is 'correct and is, therefore, affirmed.
Judgment affirmed.