LUTHER E. HALL, Judge pro tern.
Plaintiff, a waterfront laborer, brought this suit for total permanent disability under the Workmen’s Compensation Law against his employer and its compensation insurer.
The District Judge finding the plaintiff “totally temporarily disabled” rendered judgment in his favor for compensation “at the rate of $35.00 per week from November 10, 1959, not to exceed 400 weeks” plus interest on all past due installments, costs of court, and an allowance of $100.00 for an expert witness fee. The defendant employer and its insurer have appealed.
Plaintiff received an injury to his right shoulder and arm while working for his employer on the New Orleans river front when two heavy sacks of grain fell off of a conveyor belt and struck him on the point of his right shoulder. The accident happened on September 22, 1959. He was treated by Dr. Ewin, the company doctor, from September 23, 1959 to November 9, 1959 when he was discharged as able to return to work.
The employer and its insurer paid compensation benefits to plaintiff for a period of seven weeks, totalling $245.00, beginning September 23, 1959 and extending through November 10, 1959.
No questions as to amount of wages, employment status or the happening of an accident are involved. The sole question before the District Court was the extent of any disability. The plaintiff contended that at the time of his discharge by Dr. Ewin, the treating physician, he was disabled and could not return to work. Defendants con *4 tended that he had recovered and was able to return to his duties.
The testimony on behalf of plaintiff consisted solely of his own testimony and that of Dr. Byron Unkauf.
Plaintiff is 67 years old. He testified that since his injury that he has suffered a loss of strength in his right arm and a loss of ability to grip and grasp with his right hand; that at the time of his discharge his arm still gave him pain; that he felt he could not return to the strenuous work of a longshoreman or freight handler; that he has not tried to do so but has tested his strength at home moving such objects as a refrigerator and a washing machine and concluded that he was unable to do strenuous lifting for any length of time; that he has not tried to get any other work saying: “My years won’t allow me to get a job.” Following his discharge by the treating physician plaintiff saw and was examined by Dr. Unkauf, a physician of his own choice, on three occasions but was not treated by him.
Dr. Unkauf is an orthopedic specialist. He testified that he has also had wide experience in peripheral nerve lesions or injuries particularly in England during the war although as we understand it nerve injuries in this country come within the spe-ciality field of neurologists.
Dr. Unkauf first saw plaintiff on December 18, 1959. He confirmed the lack of any x-ray evidence of injury, found a full range of motion of the shoulder, elbow, wrist and all the finger joints, but noticed that plaintiff held his right shoulder low and had a inch atrophy of the biceps brachialis group of muscles and two plus wasting and weakening of the right deltoid muscle. His opinion at that time was that “this man suffered a traction lesion of the upper segments of the brachial plexus consisting of the fifth and sixth and partially of the seventh roots and is evident in an axillary and musculocutaneous nerve lesion”. He further testified that “probably he had sustained certainly some damage to the adjacent muscles and fascia which was probably responsible for his pain, and of course, if you had a traction lesion of the plexus you also experience pain”.
On a final examination conducted just a few days before the trial below which was held in May 1960, Dr. Unkauf thought plaintiff had made an excellent recovery; that much of the atrophy had subsided, and that he had only a slight disability. He further testified that “ * * * I feel he will have reached maximum improvement in a further three to four months time and I would allow him to return to his original employment”. He stated that plaintiff would probably experience some pain if he “presently” was obliged to do heavy and continuous lifting because the “time from his injury to the present time is (not) sufficiently long to state that he has completely recovered. I would expect it would take a couple or more months yet to be completely recovered”.
The defendants’ case was presented on the testimony of Dr. Ewin, a general surgeon who was the treating physician, and on the testimony of Dr. Moossy, a specialist in neurology.
Dr. Ewin examined plaintiff on September 23, 1959, the day following the accident. He found no external marks of the injury and x-rays were negative for any bone or joint pathology. His treatment consisted of medicine for pain and daily diathermy for his soft tissue injury. On nothing that plaintiff had very marked fasciculation or twitching in the muscles of the right shoulder and also in the left shoulder and both thighs, Dr. Ewin sent him to Dr. Moossy to determine if he had any degenerative condition of the spinal cord. Dr. Moossy was of the opinion that the treatment being given was proper and adequate and wished to see what it would accomplish. Dr. Ewin saw plaintiff approximately twenty times during September and October 1959, and after a final consultation with Dr. Moossy he discharged plaintiff on November 9, 1959 to return to work as a freight handler. At *5 that time he felt plaintiff had good strength and could work. Dr. Ewin saw him again the day before the trial and found a full range of motion but with some atrophy of the muscles of the right shoulder. X-rays taken showed no change and no evidence of any progressive disorder. Dr. Ewin testified that the atrophy was not present at the time he discharged plaintiff but had come on since and that plaintiff needed active use to redevelop the muscles and that he would be able to return to work. Dr. Ewin was of the opinion that plaintiff’s complaints of pain were not referrable to the injury he had received, and could find no objective explanation for it.
Dr. Moossy, the neurologist, examined plaintiff in September 19S9 and again at the time of his discharge in November 1959. On his first examination he found a full range of motion and evidence of a mild stretch injury of the brachial plexus on the right side which was “not severe”. There were muscle twitchings in the right deltoid but no muscle atrophy was noted. On his second examination on November 9, he found him much improved. Dr. Moossy found no definite neurological abnormalities aside from some muscle twitching which had diminished and which he did not consider of any significance with respect to the accident and injury.
Dr. Moossy examined plaintiff again the day before the trial, found that he had gained sixteen pounds and was looking fine, the muscle twitching had almost disappeared, there was a full range of motion in the arm and “a little mild atrophy” which he ascribed solely to disuse, and not to any nerve injury.
When asked if there was physically any reason why plaintiff should not return to work as a freight handler, Dr. Moossy testified :
“A. No, it’s understood, common sense gradual resumption of his work over a period of a few weeks I think he would be completely capable of resuming his previous activity.
“Q. By reference to a gradual resumption, are you referring to the disuse atrophy?
“A. Yes, I think anybody who has worked as this man has and after a six month layoff try to immediately resume what he was doing prior to the injury, of course would have some difficulty but I think in a matter of a few weeks he would soon be capable of what he was before.
“Q. In your opinion does he have now any disability as a result of this accident and injury with respect to this possible brachial plexus injury?
“A. No I don’t think so.”
Dr. Moossy recommended that plaintiff’s arm be reconditioned by light work for “several weeks” and that he gradually work up to heavy duty, which he was sure he was capable of doing.
At this point in the trial the District Judge inquired of counsel for the employer if the employer would give plaintiff light work at his regular wages for a while in order to attempt to rehabilitate him. This inquiry and suggestion by the Court resulted in an agreement between the parties that plaintiff would return to work the following Monday and that the employer would give him only such work as plaintiff himself felt he could do and let him work at his own speed without interference and the employer would pay him regular wages therefor. All this was contingent upon having Dr. Unkauf, plaintiff’s medical witness, re-examine plaintiff two months later to determine whether his estimate of two months continuing disability prior to complete recovery would be borne out.
Upon this agreement being completed, the Judge announced that he would render judgment as for temporary total disability but would not sign such judgment but would give the parties time to work it out, defendants being given the right to have Dr. Un-kauf examine plaintiff every two months, *6 the whole being contingent upon payment to plaintiff by defendants of all compensation due from date of discharge, November 10, 1959 to the date of the trial May 10, 1960, which amounted to the sum of $904.17. The defendants paid this sum and arrangements were made for plaintiff to report to work on the morning of May 16th, the Monday following the date of the trial.
Plaintiff failed to return to work on Monday morning as agreed and on that afternoon plaintiff’s counsel informed defendants that he had changed his mind and did not think he could or should return to work.
Upon these facts being made to the Court by way of a motion for a new trial, the Court denied the new trial and signed the judgment herein, same being signed on June 13, 1960.
It is clear to us that, except for some slight atrophy due to disuse, plaintiff had fully recovered from the injury as of the date of the trial, although Dr. Unkauf wanted to allow him a further period of three to four months convalescence before returning him to heavy duty.
At the conclusion of the trial, the District Judge seemed impressed with plaintiff’s good faith, remarking “ * * * he’d probably give you $1,000.00 if you could restore him tomorrow so he could work”. The judge also seemed to be concerned as to why a man would be content to sit down and draw $35.00 per week compensation rather than work and earn $300.00 to $400.00 per month.
However, as we have seen, when put to the test plaintiff changed his mind about returning to work, and we can conclude that this 67 year old man is quite willing to retire on $35.00 per week.
To allow him three or four hundred weeks compensation will destroy all incentive to rehabilitate his arm by exercise, and a re-examination each six months will probably reveal no change. The payment of compensation in such a case would amount to a pension.
In Reeves v. Union Sulphur Company, La.App., 193 So. 399, the Court said:
“Where an employee’s recovery is retarded and his disability prolonged because of his failure to cooperate with his physician and his wilful refusal to avail himself of means for his recovery furnished by his employer, such employee cannot recover compensation beyond the period that would have been necessary for his recovery had he properly cooperated.
“ * * * we are also in accord with the rulings that the employee has the duty of using all reasonable means afforded him for his recovery and in cooperating with his employer in minimizing the damage and loss sustained by the employer whenever he can reasonably do so.”
In Fouchea v. Maloney Trucking & Storage, La.App., 108 So.2d 273, this Court examined into the question of disuse atrophy present at the time of the trial and said:
“We think this is simply a case where the workman’s injuries have completely healed, and the only condition which exists is such discomfort as he would normally be expected to suffer as a result of a long disuse of his shoulder and arm.
“ * * * we do not agree that where the injury has been completely healed and the workman’s condition is the result only of a long disuse of the injured member that he can refuse to return to work because of slight pain and thus not cooperate with the physicians by taking the prescribed work therapy. We are convinced that exercise is all that can improve plaintiff’s ability to work * * •*.”
Giving plaintiff the benefit of Dr. Un-kauf’s prognosis that he should be able to return to heavy duty within fourth months dating from the trial below, we think the judgment appealed from should not have extended the compensation award beyond *7 that time. As we have pointed out all compensation has been paid to the date of the trial.
Accordingly, the judgment appealed from is amended by reducing the compensation awarded to an award of compensation at the rate of $35.00 per week for sixteen weeks commencing May 10, 1960, and as so amended and in all other respects the judgment is affirmed.
Amended and affirmed.