ELLIS, Judge.
The plaintiff, a former employee of Wy-andotte Chemical Corporation, brought this action to recover workmen’s compensation benefits for total and permanent disability against Hartford Accident & Indemnity Company, the compensation insurer of Wy-andotte Chemical Corporation. The plaintiff alleges on or about March 1, 1960, while performing his regular duties for the employer as a chlorine cell renewal mechanic, he slipped on an oily concrete floor and suffered a twisting injury to the right knee. The injury evidently grew progressively worse and forced the plaintiff to discontinue his usual occupation, which had required that he stoop, kneel and climb frequently. Plaintiff is now a tobacco and sundry salesman, but his duties place no great strain on the injured knee.
The suit is defended on the ground there is a dispute as to the disability, but primarily on the ground that the plaintiff was not and cannot prove he sustained an accident and injury which arose out of and in the course and scope of his employment.
Medical testimony and written medical reports introduced on the trial of the case reveal the company doctor, Dr. Howard Hansen, gives the plaintiff a twenty per cent (20%) disability of the right knee. However, Dr. Hansen also admitted the plaintiff could not return to his former occupation, and, therefore, his disability for purposes of workmen’s compensation benefits is one hundred per cent (100%). There is no real dispute as to disability.
This fact is substantiated by Dr. Thomas Campanella who performed surgery on the injured knee and by Dr. William E. Smith *35 who examined the plaintiff on three occasions, twice for the defendant and once for the plaintiff.
The two issues in this case were correctly identified by the trial court and were stated in defendant’s brief as follows, to-wit:
“(1) Whether or not plaintiff has borne the burden of proving that the accident occurred on the job in the course of his employment;
“(2) Whether or not the plaintiff is entitled to 12% penalties and attorney’s fees under the authority of LA. R.S. 22:658.”
The trial judge ruled in favor of the plaintiff on both points and the defendant has appealed. The plaintiff has answered the appeal seeking an increase in the $500.-00 awarded by the lower court as attorney’s fees; seeking legal interest on future compensation installments; and seeking the 12% penalty on future compensation installments.
In support of plaintiff’s allegation that the injury occurred on the job and in the course of his employment he presented several witnesses.
The first of these was Mr. Alvin L. Ballard, Sr., a close friend and coaching and fishing companion of the plaintiff. Mr. Ballard testified the plaintiff had told him about the accident soon after it happened and had explained how it had occurred. This testimony was objected to as hearsay and was excluded by the trial judge, but is before this court as a note of evidence on his exception. Likewise, the testimony of Mr. James Z. Richardson, a fellow employee, reveals only that the plaintiff had told him about the accident. This testimony is hearsay and admissible but we do not attach great weight to it.
The three medical experts testified that on their initial examinations of the plaintiff he related a history of having been injured on the job by slipping on an oily concrete floor. Their written reports also contain this history and tire plaintiff has consistently maintained such to be the case from the very beginning.
Mr. John Lanoux, the cell repair “leader-man” of the group in which plaintiff worked admitted the plaintiff had reported the accident to him but did not remember the date of the report or whether the report included a statement by Mr. Vaughn as to the date or location of the accident. Mr. Lanoux was sure plaintiff had a slight limp at the time, though he evidently rode a bicycle to and from the first aid room at the plant on March 2. Mr. Lanoux’s testimony, though understandably uncertain as to details and dates because of the passage of three years, does tend to substantiate the plaintiff’s own testimony.
Plaintiff testified while operating an overhead crane, he stepped off of, or over, a low brick wall used to retain the oil which dripped off the cathode cans, and he slipped. He managed to grab the crane and thus did not fall, but only twisted his right knee painfully. However, plaintiff resumed work and completed the day. His wife applied a heat medication to the knee that night and on the following day, March 2, 1960, he reported to the first aid room and saw Dr. Hansen who treated him for an “acute sprain” by the application of an Ace bandage.
There were evidently no witnesses to the accident, though there probably were other employees near by working at other tasks.
Mrs. George Vaughn, plaintiff’s wife, testified and corroborated the statements made by her husband to the extent that on March 1, 1960 when plaintiff returned from work he walked favoring his right leg and she had used a heat rub on the knee that night. She further testified the following day he returned from work wearing an Ace bandage.
The visit to the first aid room on March 2nd and the treatment given there by Dr. *36 Hansen was recorded on a report prepared by the company registered nurse, Mrs. Agatha Stonecipher. Both the testimony of Mrs. Stonecipher and the report she prepared are in evidence.
Defendant called Mr. James G. Bagot, the supervisor of the chlorine cell maintenance department at Wyandotte Chemical Corporation. Mr. Bagot testified the plaintiff had reported the accident to him on March 2, 1960 and at that time had described slipping on the concrete floor. Plaintiff gave as his reason for not reporting the accident sooner that it did not cause him any concern at the time but began to hurt on the following morning, March 2, 1960. As with the testimony of Mr. Lanoux, the details in Mr. Bagot’s mind was unclear and many of his answers were prefaced with “as I recall/'
The defendant did not offer any evidence to even suggest the injury occurred other than on the job. The only attempt made along these lines was to show the plaintiff had had a prior injury to the knee about seventeen years ago and he was an out-doorsman.
The defendant has pointed out that the plaintiff’s testimony in court on March 7 and 8, 1963 conflicts with a written statement given by plaintiff to an employee of the defendant insurance company on July 16, 1960 at the home of plaintiff.
The plaintiff’s written statement indicates the accident occurred March 1, 1960 causing severe pain but he could still walk. The statement also contains a declaration by plaintiff that he reported the accident immediately to the foreman Mr. Bagot and he was examined the following day by the company doctor.
With one and possibly two minor exceptions, the statement actually supports the sworn testimony given by Mr. Vaughn on the trial of the case. The statement and the testimony conflict with reference to the date the accident was reported to Mr. Bagot. We do not believe the exact date is relevant, so long as it was soon after the accident alleged. This discrepancy is pressed by the defendant for the purpose of impeaching the testimony of the plaintiff. In that purpose it must fail. The plaintiff was uncertain in his testimony with reference to making his reports to Mr. Lanoux and to Mr. Bagot. Also, plaintiff claims that in June of 1960 his memory had become temporarily impaired as a result of heat exhaustion suffered on the job. The heat exhaustion was proven, but the causal relationship between it and a subsequent impairment of memory was not shown by competent testimony and was discounted by Dr. Hansen. However, the actual loss or impairment of memory, from whatever cause, was somewhat corroborated by Mrs. Vaughn’s testimony.
The second possible inconsistency is apparent if a reader of the statement chooses to draw a conclusion from the words “1 could walk but there was severe pain in my right knee,” and that the pain lasted throughout the remainder of the day. This would be inconsistent with plaintiff’s not reporting the injury until the following day. We will not draw such a conclusion when it is not clearly supported. It seems clear to this court that the plaintiff did not, at the time of the accident, consider he had any injury worth reporting.
We attach no great significance to the written statement. Evidently the insurance company employee who secured it did not attach much weight to it either, as he informed the Vaughns it was only a formality required by the insurance company. While it is written in first person, it was obviously written by the defendant’s employee as he discussed the case with the plaintiff. The statement is primarily the product of the defendant’s employee and represents his impression of the plaintiff’s narrative during a period of impaired memory on the part of the plaintiff. Also, as the actual details of the events have been clouded in the minds of other witnesses because of the passage of time, we believe the plaintiff’s mind is entitled to the benefit of *37 the same doubt. We are satisfied the trial judge committed no reversible error in accepting the testimony of the plaintiff as true.
That the plaintiff in a case for workmen’s compensation benefits bears the burden of proving his injury occurred on the job and in the course and scope of his employment is too well settled and elementary to require citation of authority. The plaintiff may meet this burden by his own testimony if it is not discredited and if it is corroborated by surrounding circumstances. Jenkinson v. Clemons, La.App., 144 So.2d 181; Guilbeaux v. Trinity Universal Insurance Company, La.App., 134 So.2d 717; Card v. Southern Builders, Inc., La.App., 117 So.2d 675; and Fouchea v. Maloney Trucking & Storage Inc., La.App., 108 So.2d 273.
In the case at bar the plaintiff has not relied solely on his own testimony to prove the accident occurred on the job, but in addition to his own testimony has relied on his wife; his leaderman, Mr. Lanoux and on the medical history of this injury. The plaintiff’s testimony is thereby corroborated in its more important parts and it has not been discredited by the prior written statement. In all material particulars, the written statement and the testimony given in court are in accord.
We come now to a determination of whether or not the plaintiff is entitled to penalties and attorneys fees in connection with the alleged arbitrary discontinuance of weekly compensation benefits by the defendant. Payments were discontinued on July 3, 1962 and plaintiff was notified of this action by letter dated July 3, 1962 signed by Mr. Otto D. Engelmann, an employee of the defendant insurance company, the text of which we quote in full, to-wit:
“I am attaching herewith a photo-copy of Dr. William Smith’s letter of June 26, 1962 which you requested.
“Since Dr. Smith feels that you are able to return to work to your usual occupation at this time, we are discontinuing compensation weekly benefits.
“We would like very much to discuss the possibility of a lump sum settlement based on the disability allowed by Dr. Smith in his report and if you would care to discuss this matter further, please drop by our office at your convenience.”
The medical report or letter referred to states that in the opinion of Dr. Smith the plaintiff had a permanent disability of the right knee of 10% but he could return to work as “an operators helper for a chemical company.” Dr. Smith’s report says nothing about the possible effect stooping, kneeling or climbing would have on the knee. The defendant’s conclusion based upon Dr. Smith’s letter is not supported by the evidence because Dr. Smith’s report is silent as to the particular duties and motions which plaintiff could perform and because plaintiff was a chlorine cell renewal mechanic and not an “operators helper”, a fact well known to the defendant.
Evidence discloses Dr. Campanella examined plaintiff on August 16, 1962 and again found plaintiff had a 20% permanent knee disability and determined plaintiff could not return to work at his usual occupation. Dr. Hansen re-evaluated plaintiff on July 17, 1962 and stated in his letter-report to the defendant in part that:
“He is physically unfit for work that requires kneeling, squatting, and/or vertical climbing.
“In my opinion his permanent loss of function amounts to 20 to 25 per cent of the right leg.”
On August 23, 1962 plaintiff reported to Dr. Hansen for treatment of a swollen right knee and medication was prescribed. These three visits to doctors were admittedly known to the defendant, as was the opinion of the doctors gathered from these three visits subsequent to Dr. Smith’s report of June 26, 1962. The plaintiff had made a *38 demand to be brought up to date with weekly payments but this demand had been refused.
This is not a case where there is a bona-fide dispute between two doctors of equal eminence and who are equally conversant with the case under consideration. It is rather a case where the insurance company received a medical report which did not say what duties the employee is able to perform efficiently and without pain; which stated there was still disability; and which confused the type of work the plaintiff was able to return to with the type of work plaintiff was doing at the time of the injury. This ambiguous report was followed by two subsequent reports from the company doctor who treated plaintiff on numerous occasions over a long period and by one report from the surgeon who operated, both of which unequivocally established plaintiff’s inability to perform his usual duties.
Should any doubt still exist, Dr. Smith on March 1, 1963, in preparation for trial, re-examined the plaintiff at the request of plaintiff’s attorney (though Dr. Smith thought it was at the request of the defendant and actually refused to allow plaintiffs counsel a copy of the medical report) and in his report dated March 4, 1963, stated plaintiff would “have difficulty” returning to work as an “operator” and would “have difficulty in performing any duties which required a great deal of climbing, kneeling or squatting.”
We find defendant was arbitrary, capricious and acted without probable cause in suspending workmen’s compensation benefits on July 3, 1962. Therefore, the trial judge was correct in awarding penalties under authority of LSA-R.S. 22 :658. Under the statute, the 12% penalties are due “ * * * on the total amount of the loss, payable to the insured, or to any of said employees * *
Also, plaintiff is entitled to recover attorneys fees in the sum of $1,000.00 which amount we deem neither excessive or inadequate to cover the trial and appeal of this case.
Legal interest was granted on all past due and unpaid weekly compensation benefits from the due date of each until paid. This is proper and the plaintiff cannot recover interest on weekly benefits which have not yet become due.
It is further ordered that a penalty of 12% on all weekly compensation payments which are now due, be and it is assessed against Hartford Accident and Indemnity Company, with a like penalty on all such payments which might become 60 days overdue in the future, together with an attorney’s fee payable to the plaintiff in the sum of $1,000.00. All costs are to be paid by the defendant.
Affirmed.